J-S61008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN WALTERS | |
| Appellant | No. 109 EDA 2017 |

Appeal from the PCRA Order November 30, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000912-2012

BEFORE: LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 12, 2017**

Brian Walters appeals from the order, entered in the Court of Common Pleas of Montgomery County, denying his petition under the Post-Conviction Relief Act ("PCRA").[1] After review, we affirm.

The relevant factual and procedural history is as follows. In the early morning hours of December 17, 2011, two masked men committed an armed robbery at the residence of Ed and Rebecca Holland. Rebecca was awakened by her dog growling. When she opened the door from the bedroom to the hallway, she was startled to discover two masked men. One of the men wore

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

a ski mask, and the other had an improvised cloth bandana tied around his face. Both men brandished handguns. The men pushed Rebecca back into the bedroom and a struggle ensued when Rebecca tried to call 911 on her cell phone. The robbery was interrupted when Ed Holland woke up, retrieved his own gun, and chased the men from the house.

Immediately after the robbers fled, Rebecca called 911 and identified Walters as one of the perpetrators. Walters' wife, Aisha Harris, had worked as a housekeeper at the Holland residence prior to the robbery, and the Hollands were acquainted with both Walters and Harris. In the weeks before the robbery, Walters had assisted Ed Holland with several jobs around the Holland residence, including cleaning the garage and assisting Ed with laying tile. Rebecca had met Walters on several occasions as well, and the two had spoken at length. Based primarily on Rebecca's eyewitness identification, Walters was arrested on the night of the incident and charged with robbery,[2] burglary,[3] and person not to possess a firearm.[4]

At various times during the investigation and at trial, Rebecca stated that she recognized Walters by his distinctive eyes, by his voice, and by his

---

[2] 18 Pa.C.S. §3701(a)(1)(ii).

[3] 18 Pa.C.S. §3502(a).

[4] 18 Pa.C.S. §6105(a)(1). In 2009, Walters pled guilty to a charge of possession with intent to distribute, thus making him ineligible for firearm ownership.

body shape. Further, one of the assailants addressed Ed Holland by name during the robbery, telling him not to retrieve his gun. The robbers also appeared to have some knowledge of the Holland residence; they entered the home through the only door that lacked an alarm, and they skillfully navigated the home while fleeing. These facts, combined with the Hollands' familiarity with Walters, allowed the Hollands to identify Walters as the perpetrator.

At trial, the Commonwealth relied extensively on Rebecca's eyewitness identification, along with other circumstantial evidence. In his defense, Walters relied primarily on the alibi testimony of Harris. Harris testified that she and Walters had been asleep in bed on the night of the robbery, and that Walters therefore could not have been involved. To attack this alibi, the Commonwealth introduced phone records which revealed that calls may have been placed to and from Harris' phone during the relevant periods.

Ultimately, the jury convicted Walters of all three counts on February 7, 2013. He received an aggregate sentence of ten to twenty years' imprisonment on December 18, 2013. Walters then filed a direct appeal to this Court; we affirmed his judgment of sentence on April 24, 2015. *See Commonwealth v. Walters*, 1377 EDA 2014 (Pa. Super. 4/24/15) (unpublished memorandum decision). Walters filed a timely *pro se* PCRA petition on April 21, 2016. The PCRA court appointed present counsel, who filed an amended PCRA petition on June 24, 2016. On October 19, 2016, the

PCRA court held a hearing and denied Walters' petition on its merits. Walters now appeals that decision.

Walters' claims on appeal relate to the phone records and to the timing of the phone calls placed to and from Harris' phone. Specifically, Walters alleges that: (1) counsel failed to definitively establish that Harris called an attorney after—and not before—speaking to the police about Walters; (2) counsel failed to review the phone records and failed to cross-examine Commonwealth witnesses regarding those records, which ultimately led to the jury improperly discrediting Harris' alibi testimony; (3) the PCRA court erred in stating that it was "undisputed" that Harris spoke to Sergeant Fenerty of the Norristown Police Department prior to Harris contacting an attorney acquaintance; and (4) the PCRA court erred by concluding, in light of the above, that counsel's review of phone records was "irrelevant" to the outcome of the trial.

To be entitled to relief for ineffective assistance of counsel, a PCRA petitioner must establish that: (1) the underlying claim has merit; (2) there was no reasonable basis for counsel's action or failure to act; and (3) but for counsel's course of conduct, there is a "reasonable probability the result of the proceeding would have been different." **Commonwealth v. Treiber**, 121 A.3d 435, 444 (Pa. 2015). Failure to satisfy any of the three prongs is fatal to a claim of ineffective assistance of counsel. **Commonwealth v. Pond**, 846 A.2d 669 (Pa. Super. 2004). Counsel is presumed to provide effective

assistance, and it is solely the petitioner's burden to prove ineffectiveness. *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010).

Walters first alleges that his trial counsel, Michael Walker, Esquire, was ineffective for failing to establish that Harris called an attorney *after* she was contacted by the police. In a closely related argument, he claims that Attorney Walker failed to investigate the phone records and failed to cross-examine Commonwealth witnesses regarding the accuracy of the phone records. Walters is entitled to no relief on his ineffectiveness claims.

"Our evaluation of counsel's performance is . . . highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight." *Commonwealth v. Mason*, 130 A.3d 601, 647 (Pa. 2015) (internal citation omitted). Further, "the mere fact that [a] trial strategy ultimately proved unsuccessful does not render it unreasonable." *Commonwealth v. Spotz*, 896 A.2d 1191, 1238 (Pa. 2006) (internal citation omitted). In short, we will not utilize the benefit of hindsight to find counsel ineffective for failing to pursue an alternative course of action when the attorney acted with diligence in the first instance. *Id.*

To begin, Attorney Walker did not fail to review the phone records, as alleged by Walters. To the contrary, Attorney Walker acted with diligence in exploring the phone records and assessing their strategic impact on the case. As Attorney Walker testified during the PCRA hearing, he was concerned that the records may have undermined Harris' testimony by revealing that her

phone had changed locations during the night. N.T. PCRA Hearing, 10/19/16, at 39-40. As a result of this assessment, Attorney Walker successfully moved to have the records excluded from evidence.[5] *Id.* at 30. In so doing, he made a reasonable strategic decision, thus defeating the second prong of the test for ineffective assistance of counsel.

Prejudice also cannot be established. Harris first testified that the police arrived around 3 a.m. N.T. Trial, 2/6/13, at 58. The Commonwealth then introduced the phone record showing that Harris had called an attorney at 2:29 a.m. *Id.* at 70-71. Harris next stated that the police must have arrived an hour earlier than she had thought. *Id.* at 71. Later, Attorney Walker asked Harris, "Could you be mistaken about the times of when the officer got there when you made the phone calls?" *Id.* at 81. Harris answered in the affirmative, "Yes, I could have made a mistake." *Id.* at 81.

Harris went on to testify that she called the attorney after the police arrived because she knew that Walters was being interrogated in relation to a shooting. *Id.* at 81. This testimony is entirely consistent with the alibi defense, and counsel's failure to further question the specific timing of the calls is not prejudicial error. Attorney Walker's impeachment of the records would have further confused the issue of timing, but it would not have served

---

[5] The telephone records only became an issue at trial after Harris opened the door on cross-examination. The testimony of a witness on cross-examination is, of course, beyond the control of counsel.

to rehabilitate the essential facts of Harris' alibi defense. In short, the issue of timing does not provide a "reasonable probability the result of the proceeding would have been different." ***Treiber***, ***supra***.

Walters' next claims involve allegations of error by the PCRA court. Specifically, Walters takes issue with the court's statement that it was "undisputed at trial that Sergeant Fenerty spoke with Ms. Harris prior to Ms. Harris contacting an attorney." PCRA Opinion, 11/30/16, at 7. This claim warrants no relief. Rather, we agree that the PCRA court's "arguably inartful phrasing" does not amount to an actionable error. Rule 1925(b) Opinion, 1/31/2017, at 10. As discussed ***supra***, we agree with the trial court's conclusion that Walker failed to establish that counsel was ineffective. Accordingly, the PCRA court's misstatement of a single fact does not render its ultimate determination erroneous.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/12/2017

- 7 -